(34 Misc. Rep. 491.)

### PEOPLE ex rel. PIERCE v. BRICE.

(Supreme Court, Special Term, New York County. April, 1901.)

CONTEMPT—PUNISHMENT.

> Where a common councilman of the city was served with a writ of peremptory mandamus, requiring the assembly of the city to authorize the city comptroller to issue corporate stock to pay money due the relator on a city contract, 40 minutes before the adjournment of the council on its meeting in compliance with the writ, and was present at the passage of a resolution of the council substantially refusing to obey the writ, he is guilty of willful contempt; and under Code Civ. Proc. § 2284, providing that, where actual loss has been produced to a party in action by reason of a contempt proved, a fine sufficient to indemnify the aggrieved party must be imposed on the offender, such councilman will be fined

the costs, disbursements, and fees paid by the relator in prosecuting the contempt proceedings, and will also be committed to the county jail for 10 days.

Application by the people, on the relation of John Pierce, for a writ of mandamus against Stewart M. Brice. Motion to punish for contempt. Motion granted.

Kellogg & Rose, for relator.

James W. Gerard, for respondent.

SCOTT, J. The respondent, Brice, was in the year 1899 a member of the council of the city of New York. On the 22d of July of that year a writ of peremptory mandamus was duly issued out of this court, directed to the said council and the board of aldermen, together constituting "the municipal assembly of the city of New York," commanding said council and board of aldermen to forthwith assemble and authorize the comptroller of the city of New York to issue corporate stock of said city for the purpose of paying to the relator certain sums of money due him under a contract between himself and the mayor, aldermen, and commonalty of the city of New York, to the obligations of which the present city of New York had succeeded. The writ of mandamus was duly served on the respondent, Brice, as well as on a number of other members of the council; but notwithstanding such service, and although after such service the council was duly convened in regular session, the respondent, Brice, and a majority of the other members of the council wholly failed and refused to obey and comply with the said writ of mandamus. For their refusal to obey the writ a number of the members of the council have already been declared in contempt, and been punished by the infliction of moderate fines. The question of their liability to be thus punished, and the propriety of the punishment inflicted upon them, has been passed upon by the appellate division (People v. Guggenheimer, 44 App. Div. 399, 60 N. Y. Supp. 703), the court saying:

"The punishment inflicted was, under the circumstances, quite moderate. Imprisonment might well have been added. The disobedience of the writ was coupled with observations disrespectful to the court, and the entire action of the board, with the duty of obedience plainly before it, was perverse and rebellious."

Were it not for the fact that the motion to punish the respondent, Brice, presents certain features which were absent when the motions were made to punish his fellow councilmen, it would only be necessary to follow the precedent established by the court on the decision of those motions. On the return day of the motion to punish the present respondent, his default was taken, but was afterwards opened, and he was heard by counsel in opposition to the motion. He presented an affidavit in which he alleged, with precision and particularity, that the writ of mandamus was not served upon him until the day on which the council met, "at the instant when the said council was adjourning," and that it was therefore impossible for him to vote in compliance with the writ of mandamus; that he did not vote for a certain contumacious resolution adopted by the council at that meeting, substantially refusing to obey the writ of mandamus, and refer-

ring it to the corporation council, known in these proceedings as the "Cassidy Resolution," because introduced by a member named Cassidy; that he was not present when said resolution was voted upon, and was not served with the peremptory writ of mandamus until the said council "was in the act of adjourning." These denials and allegations raised certain issues of fact respecting the respondent's disobedience of the writ, and the matter was sent to a referee to take evidence and report it back, with his opinion upon certain stated questions. The referee has now reported back the evidence taken by him, and has answered the question stated in the order of reference as follows: First. That the writ of mandamus was served upon the respondent, Brice, on July 25, 1899, about 20 minutes of 4 in the afternoon. Second. That the council adjourned on that day at about 20 minutes past 4. Third. That the said Brice was present in the council chamber prior to the passage of the so-called Cassidy resolution; that he was present in the council chamber during its discussion; that he was present in the council chamber when said resolution was voted upon. A careful and critical reading of the testimony taken before the referee has convinced me that his conclusions are amply justified, and that no other conclusion could properly have been arrived at. The respondent therefore stands convicted, upon the record, not only of disobedience to the writ of mandamus, but of false swearing in his efforts to escape the consequences of his contumacy. He swore that the writ was served upon him "at the very instant when the council was in the act of adjourning." The evidence shows that it was served upon him at least 40 minutes before adjournment. He swore that he was not present when the so-called Cassidy resolution was voted upon, and that he came into the council meeting after that resolution had been voted upon. The evidence shows that he came into the meeting before the resolution was voted upon, that he was present while it was being discussed and when it was voted upon. Whether or not he actually voted for the Cassidy resolution is not made entirely clear, but it is certain that he did not vote against it, as did the president and some other members of the council. The respondent has therefore not only failed to purge himself of contempt, but has attempted to deceive and mislead the court as to the facts relating thereto. There can be no doubt that he has been guilty of a willful contempt of the lawful mandate of this court, and that his refusal to obey that mandate tended to, and actually did, defeat, impair, impede, and prejudice the rights and remedies of the relator.

The only question remaining to be considered is as to the penalty to be imposed. Upon the argument, counsel for the respondent called attention to the fact that fines aggregating more than $250 had already been imposed upon and paid by other members of the council for participation in a contempt similar to that with which the respondent stands charged, and urged that by reason of that fact the court had no power to inflict a further fine upon this respondent, citing as authority for his contention Association v. Kuhn, 164 N. Y. 473, 58 N. E. 649. The facts in the case at bar differ somewhat from those in the case last cited, but, in view of the conclusion which I have reached as to the proper order to be made, it is not necessary

to pass upon the question whether or not the case thus relied upon is applicable to the present case. Section 2284 of the Code of Civil Procedure provides that where actual loss or injury has been produced to a party to an action or special proceeding by reason of the misconduct proved against the offender, and the case is not one where it is specially prescribed by law that an action can be maintained to recover damages for the loss or injury, a fine sufficient to indemnify the aggrieved party must be imposed upon the offender. The costs, disbursements, and counsel fees paid by the relator in prosecuting the contempt proceedings constitute actual loss or injury produced by reason of the misconduct of the respondent. Agency v. Rothschild, 6 App. Div. 499, 39 N. Y. Supp. 700; People v. Rice, 144 N. Y. 249, 39 N. E. 88. It appears by affidavit that the expenses of the reference rendered necessary by the respondent's denials of the statements contained in the moving affidavits amount to $323.35, which the relator has paid; and, from an inspection of the referee's minutes and of the papers presented upon the motion, I am convinced that $150 would be a very moderate estimate to put upon the value of the services of the relator's attorneys in prosecuting this proceeding. These sums, therefore, represent the actual loss or injury sustained by the relator by reason of the defendant's misconduct, and a fine sufficient to recover them is clearly proper. The imposition of such a fine, however, only covers the damages which have accrued since the commission of the offense, although resulting directly from it, and have been occasioned by the respondent's unavailing efforts to purge himself. The question as to the proper penalty to be imposed for the contempt itself remains to be considered. As has been said, the evidence shows that at least 40 minutes elapsed between the service of the writ upon the respondent and the adjournment of the council. Even if he had shown so little respect for the mandate of this court as to have omitted to read the writ, he was undeniably present while it was somewhat heatedly discussed by his fellow members, and must have learned from that discussion that such a writ had been granted, and what it required the council to do. Such knowledge, if acquired only by hearing the matter discussed, was sufficient to charge him with contempt for refusing to act in accordance with the requirements of the writ. People v. Rice, supra. He was also present while the contumacious Cassidy resolution, which referred in terms to the writ of mandamus, was discussed and voted upon; and, if he did not actually vote for it, at least sat mute and permitted it to pass without opposition. Under these circumstances, there can be no doubt that his contempt was willful. The appellate division has expressed the opinion that even as to the councilmen who frankly admitted the acts charged against them, and threw themselves on the mercy of the court, actual imprisonment might well have been added to a pecuniary fine, and there is abundant authority in this state for punishing contempts like that of which the respondent is guilty both by fine and imprisonment. People v. Sturtevant, 9 N. Y. 263, 59 Am. Dec. 536; People v. Dwyer, 90 N. Y. 402. I see no reason for departing from these precedents in the present case. If a different rule were to be now established,

and it were to be understood that no penalty except a pecuniary fine attached to the willful and deliberate violation of a mandate of this court, the authority of the court would fall into contempt, and instances might be expected to present themselves in which persons interested in having a mandate disobeyed would willingly undertake to indemnify those who refused to obey it, against the consequences of their act. For the contempt of which he is adjudged guilty, the respondent will be committed to the county jail for 10 days, and fined the sum of $473.35, which is found to be the actual loss or injury produced by reason of the misconduct proved against him.

Ordered accordingly.